# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DAVID RAMSHAW,

      Plaintiff,

v.

ALEXANDER PROPERTIES
GROUP, INC., NATIONAL CREDIT
SYSTEMS, INC., and EQUIFAX
INFORMATION SERVICES, LLC,

      Defendants.

COMPLAINT

JURY TRIAL DEMANDED

## **COMPLAINT**

Plaintiff David Ramshaw ("Mr. Ramshaw") brings this action against Defendants Alexander Properties Group, Inc. ("APG"), National Credit Systems, Inc. ("NCS"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"). Mr. Ramshaw asserts claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and Georgia law governing the handling of tenant security deposits, notices, and inspections, O.C.G.A. §§ 44-7-31, *et seq.* This Action arises from Mr. Ramshaw's transaction to lease residential property, and common questions of law and fact will arise as to the Defendants in this action, including, but not limited to, the amount and validity of a charge that Mr. Ramshaw

allegedly owed following his surrender of the rental premises—an amount which Mr. Ramshaw vehemently has denied and continues to deny he ever owed. *See* Fed. R. Civ. P. 20(a)(2)(B).

## PARTIES

1.     Mr. Ramshaw is an adult who, from March 9, 2022, to March 30, 2023, resided at a property that Aliyah McCrary ("Ms. McCrary") owned.

2.     Mr. Ramshaw is a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

3.     Defendant APG is a Georgia corporation that maintains its principal place of business at 3190 Northeast Expressway, Suite 400, Atlanta, Georgia 30341.

4.     Defendant APG may be served via its registered agent, Kevin Caiaccio, who is located at 5605 Glenridge Drive, Suite 1090, Atlanta, Georgia 30342.

5.     Defendant NCS is a Georgia corporation that maintains its principal place of business at 1775 The Exchange, S.E., Suite 300, Atlanta, Georgia 30339.

6.     Defendant NCS may be served via its registered agent, C T Corporation System, which is located at 289 S. Culver Street, Lawrenceville, GA 30046-4805.

7.    Defendant NCS regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions such as the transactions at issue in this lawsuit and described herein and is therefore a "furnisher" of information within the meaning of 15 U.S.C. § 1681s-2.

8.    Defendant NCS is a collections agency specializing in the collection of consumer debt.

9.    Defendant NCS uses interstate commerce and/or mail in its business of collecting consumer debts.

10.    Defendant manages and collects hundreds—if not thousands—of consumer debts annually.

11.    Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

12.    Defendant Equifax is a Georgia limited liability company that maintains its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

13.    Defendant Equifax may be served via its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

14.    Defendant Equifax regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses

3

interstate commerce to prepare and furnish the reports. Accordingly, Defendant

Equifax is a "consumer reporting agency" within the meaning of 15 U.S.C.

§ 1681a(f).

## JURISDICTION AND VENUE

15.    This Court has federal question jurisdiction over Mr. Ramshaw's

FCRA and FDCPA claims pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and

15 U.S.C. § 1692k(d).  This Court has supplemental jurisdiction over Mr.

Ramshaw's state law claims pursuant to 28 U.S.C. § 1367.

16.    This court has personal jurisdiction over Defendants because, *inter

alia*, Defendants are Georgia corporations that maintain their respective principal

places of business in Georgia and frequently and routinely conduct business in the

State of Georgia, including the conduct complained of herein.

17.    Venue in this Court is proper in the Atlanta Division because the

conduct complained of herein occurred in DeKalb County, which lies in the

Atlanta Division.

## FACTUAL ALLEGATIONS

18.    According to a lease agreement that Mr. Ramshaw entered with

Aliyah McCrary ("Ms. McCrary"), Ms. McCrary was the "Owner/Agent" of the

rental premises located at 4100 Glenwood Road, Decatur, GA 30032 (the

"Premises").  Lease Agreement, Ex. A hereto.

4

19.    Ms. McCrary leased the Premises to Mr. Ramshaw for a term of approximately one year beginning on March 9, 2022, and ending on March 31, 2023.

20.    Mr. Ramshaw paid Ms. McCrary a security deposit of $300.  Resident History Report, Ex. B hereto.

21.    Before Mr. Ramshaw vacated the Premises, Ms. McCrary sold the Premises to Defendant APG.

22.    Neither Ms. McCrary nor Defendant APG provided a list of damages to Mr. Ramshaw in accordance with O.C.G.A. § 44-7-33.

23.    Upon purchase of the Premises, Defendant APG assumed responsibility for all contracts and legal obligations.

24.    On or about March 30, 2023, Mr. Ramshaw vacated the Premises.

25.    Mr. Ramshaw left the Premises clean and in the same condition in which he received it, ordinary wear and tear excepted.

26.    For more than three months after Mr. Ramshaw vacated the Premises, he heard nothing from Defendant APG.

27.    At no point did Ms. McCrary or Defendant APG provide a list of damages to Mr. Ramshaw in accordance with O.C.G.A. § 44-7-33.

28.    Neither Ms. McCrary nor Defendant APG ever performed a move-out inspection, provided an itemized list of alleged damages to the Premises to Mr. Ramshaw, or refunded Mr. Ramshaw's security deposit.

29.    Then, on August 1, 2023, Defendant NCS, a collections agency, attempted to collect an alleged debt that Defendant NCS and Defendant APG claimed Mr. Ramshaw owed in the amount of $3,700.00 minus certain prorations that Mr. Ramshaw was entitled to, including the refund of $495 for rent, $23 for water, $3.00 for trash service, and $2 for pest service, for a total of $3,177 (the "Alleged Debt").

30.    Mr. Ramshaw never owed the Alleged Debt (or any other amount), which at all times was invalid both legally and factually.

31.    In addition, Defendant APG retained Mr. Ramshaw's entire security deposit of $300, failed to provide a written statement identifying the reasons for such retention, and failed to conduct a move-out inspection within the time periods specified in O.C.G.A. §§ 44-7-33 and 44-7-34.

32.    Defendant APG also failed to maintain Mr. Ramshaw's security deposit in an escrow account or post a bond in accordance with Georgia law. *See* O.C.G.A. §§ 44-7-31 and 44-7-32.

33.    Mr. Ramshaw disputed the Alleged Debt with Defendant NCS on August 1, 2023, and requested verification of it in accordance with the FDCPA.

34.    Mr. Ramshaw disputed the Alleged Debt a second time via a letter that was delivered to Defendant NCS on September 5, 2023.

35.    Defendant NCS never provided any information substantiating the debt; instead, Defendant NCS simply provided a balance sheet with no explanation other than the word "Damages."

36.    Defendant NCS continued to make harassing telephone calls to Mr. Ramshaw on August 14, 2023, August 31, 2023, and September 28, 2023, without providing any information substantiating the Alleged Debt.

37.    Defendant NCS furnished information about the Alleged Debt to consumer reporting agencies, including Defendant Equifax, Experian Information Solutions, LLC ("Experian"), TransUnion, LLC ("TransUnion"), and other consumer reporting agencies.  Upon information and belief, Defendant NCS not only furnished information about the Alleged Debt as a single tradeline; NCS reported it as two independent collection accounts as follows:



38.    Mr. Ramshaw disputed the Alleged Debt to consumer reporting agencies, including, but not limited to, TransUnion, Defendant Equifax, and Experian.

39.    Although Defendant TransUnion removed all reporting of the Alleged Debt, Defendant Equifax failed to remove the Alleged Debt entirely from Mr. Ramshaw's consumer reports and consumer file.

40.    In fact, Defendant Equifax initially reported the Alleged Debt on two separate tradelines.

41.    Upon information and belief, Defendant Equifax communicated Mr. Ramshaw's dispute to Defendant NCS.

42.    Defendant NCS confirmed the accuracy of the reporting of the Alleged Debt to both Defendant Equifax and Experian as shown below, which states, "The creditor told us that the reported balance is correct."

**The results are:** VERIFIED AS REPORTED

The creditor told us that the reported balance is correct.

**Following fields updated:** Status Date, Balance Date, Additional Information

| Account number | Date Reported | Date Assigned | Creditor Class | Client Name | Original Amount | Status Date |
|---|---|---|---|---|---|---|
| *0569 | 10/07/2024 | 06/03/2023 | Rental/Leasing | UPHILL FLATS APTS | $3,177 | 10/07/2024 |

| Status | Date of 1st | Balance Date | Balance Amount | Last Payment Date | Whose Account |
|---|---|---|---|---|---|
| 04/19/2023 | Delinquency 04/19/2023 | 10/07/2024 | $3,177 | | Joint Account |

**Additional information:** Consumer Disputes This Account Information

43.     Upon information and belief, Defendant NCS received an automated
universal dataform ("AUD") or other communication from TransUnion through the
eOSCAR system, indicating that TransUnion removed the Alleged Debt from
Mr. Ramshaw's consumer file and consumer reports as evidenced by the following
excerpt from a TransUnion communication to Mr. Ramshaw:

## Dispute item
### Account: NATIONAL CREDIT SYSTEMS

**Result**                                    **Approved**

TransUnion investigated your dispute and deleted this item from
your credit report.

44.     In contrast to TransUnion's response, Defendant Equifax refused to
remove the Alleged Debt in its entirety from Mr. Ramshaw's consumer reports and
consumer file.

45.     Defendants APG and NCS attempted to collect an invalid debt, including, but not limited to, furnishing information about the Alleged Debt on a monthly basis, furnishing information about the Alleged Debt as two separate tradelines, and confirming the accuracy of the Alleged Debt's reporting to Experian, Defendant Equifax, and other consumer reporting agencies, all of which occurred within the one-year statute of limitations under the FDCPA.

46.     Because of Defendants' actions, Mr. Ramshaw's credit score was adversely affected and his applications to lease two separate homes were denied on August 19, 2024, and August 21, 2024, respectively.

47.     Defendants APG and NCS sought to collect an invalid debt, furnished inaccurate information to consumer reporting agencies, and took other actions in violation of federal and Georgia law.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. §§ 1681e(b) and 1681i

## Defendant Equifax

48.     Mr. Ramshaw realleges paragraphs 1 through 47 of this Complaint.

49.     15 U.S.C. § 1681e(b) requires Defendant Equifax to follow reasonable procedures to assure maximum possible accuracy of information whenever it prepares a consumer report.

50.     15 U.S.C. § 1681e(b)'s requirement extends to Defendant Equifax's reinvestigation reports and consumer disclosures.

51.     15 U.S.C. § 1681(a)(1)(A) required Defendant Equifax to independently investigate Mr. Ramshaw's disputes.

52.     15 U.S.C. § 1681i(a)(2) required Defendant Equifax to communicate the specifics of Mr. Ramshaw's disputes to Defendant NCS.

53.     15 U.S.C. § 1681i(a)(4) required Defendant Equifax to review and consider all relevant information that Mr. Ramshaw submitted.

54.     15 U.S.C. § 1681i(a)(4) required Defendant Equifax to conduct a reasonable reinvestigation of Mr. Ramshaw's dispute.

55.     Mr. Ramshaw's dispute clearly identified the inaccuracies in Defendant Equifax's reporting.

56.     Mr. Ramshaw provided all relevant information necessary for Defendant Equifax to reinvestigate and correct the inaccuracies in its reporting.

57.     Defendant Equifax breached its duties as described herein.

58.     If Defendant Equifax had conducted a reasonable reinvestigation, Defendant Equifax would have reviewed and considered all information that

Mr. Ramshaw submitted in his dispute letter and would have determined that its reporting was factually incorrect, inaccurate, and misleading.

59.    If Defendant Equifax had conducted a reasonable reinvestigation of Mr. Ramshaw's dispute, Defendant Equifax would have appropriately corrected the tradelines on Mr. Ramshaw's consumer report and in his consumer file.

60.    Because Defendant Equifax failed to follow reasonable procedures to assure maximum possible accuracy of information and failed to conduct a reasonable reinvestigation of Mr. Ramshaw's disputes, Defendant Equifax reported the Alleged Debt as multiple tradelines and, separately, failed to modify the false and misleading information appropriately in Mr. Ramshaw's credit file and on Mr. Ramshaw's consumer reports.

61.    Defendant Equifax had all the necessary information to correct its reporting.  That Defendant Equifax failed to correct its reporting despite its having information evidencing that its reports were false and misleading indicates that Defendant Equifax's reinvestigation procedures were not reasonable.

62.    That Defendant Equifax had all information necessary to correct its reporting but failed to do so indicates that Defendant Equifax recklessly disregarded Plaintiff's dispute and the requirements of the FCRA, amounting to a willful violation of the FCRA.

63.     Defendant Equifax willfully, or in the alternative negligently, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information concerning Mr. Ramshaw in his consumer reports, in reckless disregard of the statutory requirements, and Mr. Ramshaw's dispute.

64.     Defendant Equifax willfully, or in the alternative, negligently violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of Mr. Ramshaw's dispute and by failing to appropriately modify the information in Mr. Ramshaw's consumer file and his consumer report in reckless disregard of the statutory requirements, and Mr. Ramshaw's dispute.

65.     As a result of Defendant Equifax's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Mr. Ramshaw has suffered actual damages as described herein.  Mr. Ramshaw, therefore, is entitled to recover actual damages from Defendant Equifax pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681e(b) and 1681i

### Defendant NCS

66.     Mr. Ramshaw realleges paragraphs 1 through 47 of this Complaint.

67.    15 U.S.C. § 1681s-2(a) requires Defendant NCS to provide accurate information whenever it furnishes information to any consumer reporting agency.

68.    Upon information and belief, Defendant Equifax timely notified Defendant NCS of Mr. Ramshaw's disputes and provided Defendant NCS with all the relevant information that Mr. Ramshaw submitted in support of his dispute to Defendant Equifax.

69.    15 U.S.C. § 1681s-2(b) required Defendant NCS to investigate Mr. Ramshaw's dispute and accurately report its findings to Defendant Equifax.

70.    A furnisher's investigation must address the substance of the consumer's dispute; a furnisher may not conduct a cursory review of a consumer's dispute.

71.    15 U.S.C. § 1681s-2(b) required Defendant NCS to conduct a reasonable investigation of Mr. Ramshaw's dispute.

72.    15 U.S.C. § 1681s-2(b) required Defendant NCS to review and consider all relevant information that Mr. Ramshaw submitted to Defendant Equifax in support of his dispute.

73.    Mr. Ramshaw's disputes were clear as to the inaccurate information that Defendant NCS furnished to Defendant Equifax.

74.    Defendant NCS breached its duties as described herein.

75.     If Defendant NCS had conducted a reasonable investigation of Mr. Ramshaw's dispute, Defendant NCS would have reviewed and considered all of the information that Mr. Ramshaw submitted to Defendant Equifax in his dispute and would have easily detected that Defendant NCS had furnished factually incorrect, inaccurate, and misleading information.

76.     If Defendant NCS had conducted a reasonable investigation of Mr. Ramshaw's dispute, Defendant NCS would have corrected the tradeline on Mr. Ramshaw's consumer reports.

77.     Because Defendant NCS failed to furnish accurate information and, separately, failed to conduct a reasonable investigation of Mr. Ramshaw's disputes, the false and misleading information in Mr. Ramshaw's credit file and on Mr. Ramshaw's reports as described herein was not appropriately modified.

78.     Defendant NCS possessed the information necessary to correct its reporting but failed to do so.  Such failure indicates that Defendant NCS's review procedures were not reasonable.

79.     Defendant NCS possessed evidence that its reporting was false and misleading and received notification from TransUnion that TransUnion had suppressed the tradeline's reporting.  Despite possessing such information, Defendant NCS failed to correct its reporting, indicating that Defendant NCS recklessly disregarded Mr. Ramshaw's dispute, TransUnion's notification of

suppression of the tradeline's reporting, and the requirements of the FCRA, amounting to a willful violation of the FCRA.

80.    Defendant NCS willfully, or in the alternative, negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation upon receiving notice of Mr. Ramshaw's disputes from Defendant Equifax, by failing to report the results of its investigation appropriately, and by failing to modify the disputed information in reckless disregard of the statutory requirements, Plaintiff's disputes, and communication from TransUnion that it had suppressed the reporting of the tradeline complained of in this lawsuit.

81.    Because Defendant NCS violated 15 U.S.C. § 1681s-2(b), Mr. Ramshaw has suffered actual damages as stated herein.  Mr. Ramshaw, therefore, is entitled to recover actual damages from Defendant NCS under 15 U.S.C. §§ 1681n and 1681o.

82.    Defendant NCS's actions and omissions were willful, rendering Defendant NCS liable to Plaintiff for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

83.    Mr. Ramshaw is entitled to recover costs and attorneys' fees from Defendant NCS pursuant to 15 U.S.C. § 1681n and 1681o.

## COUNT III

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692, *et seq.*

### Defendants NCS

84. Mr. Ramshaw realleges paragraphs 1 through 47 of this Complaint.

85. Mr. Ramshaw is a consumer within the meaning of 15 U.S.C. § 1692a(3).

86. The Alleged Debt arises out of a transaction primarily for personal, family, or household purposes.

87. Defendant NCS is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

88. The FDCPA prohibits the false representation of the "character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).

89. The FDCPA also expressly prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).

90. The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

91.    The FDCPA prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

92.    The Alleged Debt is and was at all relevant times invalid, was not authorized by Mr. Ramshaw's lease, and was prohibited under Georgia law.

93.    Defendant NCS confirmed the accuracy of Defendant Equifax's reporting of the Alleged Debt in response to Mr. Ramshaw's dispute, which generated a consumer disclosure dated October 8, 2024, which is excerpted above.

94.    By confirming the accuracy of Defendant Equifax's reporting of the Alleged Debt, Defendant NCS falsely represented the "character, amount, or legal status of any debt" in violation of 15 U.S.C. § 1692e(2)(A).

95.    By confirming the accuracy of Defendant Equifax's reporting of the Alleged Debt, Defendant NCS communicated credit information it knew or should have known was false in violation of 15 U.S.C. § 1692e(8).

96.    By confirming the accuracy of Defendant Equifax's reporting of the Alleged Debt, Defendant NCS attempted to collect an amount that is not expressly authorized by the agreement creating the debt or permitted by law in violation of 15 U.S.C. § 1692f(1). *See, e.g.*, O.C.G.A. § 44-7-35(b) ("The failure of a landlord to provide the lists and written statements within the time periods specified in Code

Section 44-7-34 shall work a forfeiture of all the landlord's rights to withhold any portion of the security deposit or to bring an action against the tenants for damages to the premises.").

97.    Defendant NCS's actions and communications regarding the Alleged Debt and the related consumer reporting would mislead the "least sophisticated consumer."

98.    Each of Defendant NCS's FDCPA violations entitle Mr. Ramshaw to actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k(a).

**COUNT IV**

**VIOLATIONS OF GEORGIA LANDLORD-TENANT LAW**

**O.C.G.A. §§ 44-7-31, ET SEQ.**

**Defendant APG**

99.    Mr. Ramshaw realleges paragraphs 1 through 47 of this Complaint.

100.    Under Georgia law, "The failure of a landlord to provide the lists and written statements *within the time periods* specified in Code Section 44-7-34 *shall work a forfeiture of all the landlord's rights to withhold any portion of the security deposit* or to bring an action against the tenants for damages to the premises." O.C.G.A. § 44-7-35(b) (emphasis added).

101.   Code Section 44-7-34 sets forth the time within which landlords must provide damages lists to tenants.  It states that within 30 days of the landlord's obtaining possession of the leased premises from the tenant, " . . . the landlord shall provide the tenant with a written statement identifying the exact reasons for the retention [of the security deposit], which shall include the comprehensive list of damages prepared as required by Code Section 44-7-33, if the reason for retention is based on damages to the premises.  When such statement is delivered, it shall be accompanied by a payment of the difference between any sum deposited and the amount retained."  O.C.G.A. § 44-7-34(a).

102.   Defendant APG failed to provide a written statement identifying the reasons for the retention of Mr. Ramshaw's security deposit within the time periods specified in O.C.G.A. § 44-7-34.

103.   Accordingly, under O.C.G.A. § 44-7-35(b)'s plain text, Defendants have "forfeit[ed]" any right to withhold any portion of Mr. Ramshaw's security deposit.

104.   Pursuant to O.C.G.A. § 44-7-35(c), Mr. Ramshaw is entitled to three times the amount that Defendant APG wrongfully withheld plus reasonable attorneys' fees.

## COUNT V

## VIOLATIONS OF GEORGIA LANDLORD-TENANT LAW

### O.C.G.A. §§ 44-7-31, 44-7-32, 44-7-33, and 44-7-35(c)

### Defendant APG

105.  Mr. Ramshaw realleges paragraphs 1 through 47 of this Complaint.

106.  Under O.C.G.A. § 44-7-35(a)(1), landlords "shall not be entitled to retain any portion of a security deposit" if the "security deposit was not deposited in an escrow account in accordance with Code Section 44-7-31 or a surety bond was not posted in accordance with Code Section 44-7-32" and the initial and final damages lists were not made and presented as O.C.G.A. § 44-7-33 requires.

107.  O.C.G.A. § 44-7-33 requires tenants to receive a "comprehensive list of any existing damage to the premises" before tenants tender a security deposit. O.C.G.A. § 44-7-33(a).

108.  Furthermore, O.C.G.A. § 44-7-33 requires landlords or their agents to inspect the rental premises and compile "a comprehensive list of any damage done to the premises" which shall form the basis for any charge against the security deposit and the estimated dollar value of such damage "***within three business days after the termination of the residential lease*** and vacation of the premises or the surrender and acceptance of the premises, whichever occurs first." O.C.G.A. § 44-7-33(b) (emphasis added).

109.   O.C.G.A. §§ 44-7-31 and 44-7-32 require landlords to maintain security deposits in an escrow account or to post a surety bond.

110.   Defendants intentionally failed to provide all required damages lists as O.C.G.A. §§ 44-7-33(a) and 44-7-33(b) require.

111.   Furthermore, Defendants intentionally deposited the security deposit in a general account at Bank of America—not an escrow account—and failed to post a surety bond in violation of O.C.G.A. §§ 44-7-31 and 44-7-32.

112.   Accordingly, Defendants "shall not be entitled to retain any portion" of the security deposits Defendants collected from Mr. Ramshaw.

113.   O.C.G.A. § 44-7-35(c) provides that, "Any landlord who fails to return any part of a security deposit which is required to be returned to a tenant pursuant to this article shall be liable to the tenant in the amount of three times the sum improperly withheld."

114.   Accordingly, Mr. Ramshaw is entitled to three times the amount wrongfully withheld, plus reasonable attorneys' fees pursuant to O.C.G.A. § 44-7-35(c).

## COUNT VI

### O.C.G.A. § 44-7-35(c)

### Defendant APG

115.   Mr. Ramshaw realleges paragraphs 1 through 47 of this Complaint.

116.    O.C.G.A. § 44-7-34(a) states, "*No security deposit shall be retained* to cover *ordinary wear and tear* which occurred as a result of the use of the premises for the purposes for which the premises were intended, provided that there was no negligence, carelessness, accident, or abuse of the premises by the tenant or members of his or her household or their invitees or guests."

117.    O.C.G.A. § 44-7-35(c) provides that, "Any landlord who fails to return any part of a security deposit which is required to be returned to a tenant pursuant to this article shall be liable to the tenant in the amount of three times the sum improperly withheld."

118.    Defendant APG willfully retained Mr. Ramshaw's security deposit, in whole or in part, for items that constitute "ordinary wear and tear" in violation of O.C.G.A. § 44-7-34.

119.    Accordingly, Mr. Ramshaw is entitled to three times the amount wrongfully withheld, plus reasonable attorneys' fees pursuant to O.C.G.A. § 44-7-35(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court provide the following relief:

A.    Trial by jury on each issue so triable;

B.    Judgment for Mr. Ramshaw on each count listed above;

C.      Award of actual, exemplary, statutory, treble, and punitive damages to which Mr. Ramshaw is entitled;

D.      Award of costs and reasonable attorneys' fees pursuant to O.C.G.A. § 44-7-35(c); and

E.      Grant such further relief as provided by law or equity, or as the Court deems appropriate and just.

Respectfully submitted,                      Date: June 23, 2025

                                            _____
                                            William H. Rooks
                                            Georgia Bar No. 906785
                                            Rooks@Law4GA.com
                                            Law for Georgia, LLC
                                            6075 Barfield Road
                                            Sandy Springs, Georgia. 30328
                                            Telephone: (470) 222-8406
                                            Facsimile: (470) 232-1098

                                            *Attorney for Plaintiff*
                                            *David Ramshaw*